**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————————— :
:
**CARMEN JOSEFINA CONTRERAS** :
**AYBAR and DARIO DE JESUS MORETA** :
**CONTRERA,** :
:
           **Plaintiffs,** :   **Civil Action No. 16-1539 (ES) (JAD)**
:
:   **OPINION**
        **v.** :
:
**JEH JOHNSON, in his official capacity** :
**as Secretary of Homeland Security, et al.,** :
:
        **Defendants.** :
—————————————————————————— :

**SALAS, DISTRICT JUDGE**

### I. Introduction

The facts of this case are tragic and, unfortunately, so is the result. In 2005, Plaintiff Carmen Josefina Contreras Aybar left the Dominican Republic and traveled to the United States on what she anticipated to be a short trip. During her stay, she took a job at a clothing store in Manhattan. Later that year, Carmen suffered a vicious and brutal rape at the hands of her co-worker, resulting in her hospitalization. Nevertheless, Carmen assisted the authorities and cooperated with police officers, leading to her attacker's arrest.

Because of her cooperation with law enforcement, Carmen received a U Visa—a type of lawful temporary status offered to victims of rape and other violent crimes who cooperate with law enforcement in the investigation and prosecution of those crimes. After Carmen adjusted from her U Visa status to Legal Permanent Resident ("LPR") status, she sought to take advantage of another provision of the U Visa statutory regime. That provision allows for former U Visa holders

to apply for derivative U nonimmigrant status for qualifying family members, such as children under the age of twenty-one. As a former U Visa holder, Carmen filed a petition (the first step of a two-step process) to adjust the status of her twenty-year-old son, Plaintiff Dario de Jesus Moreta Contrera, who was then living in the Dominican Republic. United States Citizenship and Immigration Services ("USCIS") approved Carmen's petition, and Dario, who had since traveled to the United States, filed his application for adjustment of status (the second step of the process).

But, as explained in more detail below, USCIS revoked approval of Carmen's petition and denied Dario's pending application because Dario did not remain a "child" (i.e., under twenty-one) through the adjudication of his application. That requirement—that the "qualifying family relationship" continue to exist through the adjudication process—is mandated by 8 C.F.R. § 245.24(g)(2), a Department of Homeland Security ("DHS") regulation referred to herein as the "Age-Out Rule." Plaintiffs brought this action to challenge the legality of the Age-Out Rule.

Before the Court are Plaintiffs' motion for summary judgment (D.E. No. 24) and Defendants'[1] cross-motion for summary judgment (D.E. No. 25). The Court has jurisdiction under 28 U.S.C. § 1331 and the authority for judicial review under 5 U.S.C. § 702. The Court has considered the parties' submissions and decides the matter without oral argument under Federal Rule of Civil Procedure 78(b). For the following reasons, the Court DENIES Plaintiffs' motion for summary judgment and GRANTS Defendants' cross-motion for summary judgment.

---

[1] On October 8, 2017, L. Francis Cissna was sworn in as the Director of USCIS and thus automatically replaced Leon Rodriguez in this action. *See* Fed. R. Civ. P. 25(d). Similarly, on December 6, 2017, Kirstjen Nielsen was sworn in as the Secretary of the DHS and thus automatically replaced Jeh Johnson. *See id.*

## II. Relevant Background

### A. The U Visa Statutory Scheme

In 2000, Congress enacted the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"), which created the U-1 nonimmigrant visa classification ("U Visa") within the Immigration and Nationality Act ("INA"). VTVPA, Pub. L. No. 106-386, 114 Stat. 1464 (codified as amended at 8 U.S.C. § 1101, *et seq.*).[2] The U Visa is a temporary legal status offered to alien victims of rape and other specified violent crimes who have cooperated (or are likely to cooperate) in the investigation and prosecution of those crimes. 8 U.S.C. § 1101(a)(15)(U)(i)(III). Since a U Visa affords alien victims only temporary status, a U Visa holder may, after three years and upon meeting certain conditions, apply for an adjustment of status to LPR under 8 U.S.C. § 1255(m). To do so, the U Visa holder must complete a Form I-485. Congress's express intent in enacting the U Visa scheme was both to "strengthen the ability of law enforcement agencies to detect, investigate and prosecute" the specified crimes, and to "offer[] protection to victims of such offenses in keeping with the humanitarian interests of the United States." VTVPA, Pub. L. No. 106-386, § 1513(a)(2)(A).

In addition, Congress created two mechanisms for alien victims to adjust the status of their children (or other qualifying members) "when doing so is justified on humanitarian grounds, for family unity, or is otherwise in the public interest." *Id.* at § 1513(a)(2)(C). *First*, under 8 U.S.C. § 1101(a)(15)(U)(ii)(II) and related regulations, a victim who holds or is applying for a U Visa may apply for his or her child to receive derivative U nonimmigrant status (a "derivative U Visa"). *Second*, a former U Visa holder may apply to adjust the status of his or her alien child to LPR status if the former U Visa holder has already adjusted or is adjusting to LPR status and the

---

[2]     Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

3

qualifying family member never held a derivative U Visa.  *See* 8 U.S.C. § 1255(m)(3).  This case

deals with the second scenario.

8 U.S.C. § 1255(m)(3) reads:

> Upon approval of adjustment of status . . . of an alien [admitted into the United States under 8 U.S.C. § 1101(a)(15)(U)(i) (i.e., a U Visa holder)] . . . the Secretary of Homeland Security may adjust the status of or issue an immigrant visa to a spouse, a child, or, in the case of an alien child, a parent who did not receive a nonimmigrant visa under section 1101(a)(15)(U)(ii) of this title if the Secretary considers the grant of such status or visa necessary to avoid extreme hardship.

Under the INA, a "child" is defined as "an unmarried person under twenty-one years of age."  *Id.*

§ 1101(b)(1).

Congress explicitly directed the Attorney General, Secretary of Homeland Security, and

the Secretary of State to promulgate regulations to implement the provisions contained within Title

V of the VTVPA and the Violence Against Women Act of 2005.  *See* Violence Against Women

and Department of Justice Reauthorization Act of 2005 ("VAWA"), Pub. L. No. 109-162 § 828,

119 Stat. 2960, 3066 (codified as amended in scattered sections of 8 U.S.C.).  The DHS

promulgated regulations implementing the U Visa statute.  72 Fed. Reg. 53014 (Sept. 17, 2007)

(codified in relevant parts at 8 C.F.R. § 214.14, *et. seq.*).  Applicable here is the regulatory

framework later set forth by the DHS allowing principal U Visa holders to adjust their status and

the status of their qualifying family members.

In short, the DHS created a two-step process for former U Visa holders to adjust the status

of a qualifying family member.  *First*, the former U Visa holder files an I-929 petition on behalf

of the qualifying family member.  8 C.F.R. § 245.24(h).  *Second*, the qualifying family member

files a Form I-485 (commonly referred to as an application for a "green card") to adjust his or her

status.  *Id.* § 245.24(i).  Under 8 C.F.R. 245.24(g), a petitioner must demonstrate that:

(1) The qualifying family member has never held U nonimmigrant status;

(2) *The qualifying family relationship, as defined in paragraph (a)(2) of this section, exists at the time of the U-1 principal's adjustment and continues to exist through the adjudication of the adjustment or issuance of the immigrant visa for the qualifying family member;*

(3) The qualifying family member or the principal U-1 alien, would suffer extreme hardship as described in 8 CFR 245.24(g) (to the extent the factors listed are applicable) if the qualifying family member is not allowed to remain in or enter the United States; and

(4) The principal U-1 alien has adjusted status to that of a lawful permanent resident, has a pending application for adjustment of status, or is concurrently filing an application for adjustment of status.

The regulation at 8 C.F.R. § 245.24(g)(2)—the Age-Out Rule—mandates that the intended beneficiary maintain his or her "qualifying family relationship" until USCIS completely adjudicates his or her application for adjustment of status. Where, like here, the "qualifying family relationship" is parent-child, the Age-Out Rule requires the intended beneficiary to remain a "child" (i.e., under the age of twenty-one) through the adjudication process. The Age-Out Rule thus dictates that an otherwise eligible child who was under the age of twenty-one when his or her parent filed the I-929 petition will lose eligibility to adjust status if he or she turns twenty-one before USCIS approves the application.

In 2013, Congress changed the law regarding *current* U Visa holders to provide "age-out" protection for their children seeking derivative U nonimmigrant status. *See* VAWA of 2013, Pub. L. No. 113-4, § 805, 127 Stat. 54, 111 (codified at 8 U.S.C. § 1184(p)). Now, children of current U Visa holders who apply for derivative U nonimmigrant status need not remain under twenty-one through the adjudication of their petition; rather, they need only be under twenty-one on the date their petition is filed. But Congress did not change the law for *former* U Visa holders (like Carmen). Thus, the Age-Out Rule applies here.

## B. Factual Background

The parties do not dispute the material facts in this case. Carmen came to the United States in 2005 and left her daughter and son, Dario, with her ex-husband in the Dominican Republic. (D.E. No. 24-4, Certified Administrative Record ("CAR") at 36-37, ¶¶ 2-3; 44, ¶ 6). During her stay, Carmen took a job in Manhattan to help with the expenses of her trip. (*Id.* at 36-37, ¶ 3). While working, Carmen was forcibly raped by a co-worker. (*Id.* at 37-38, ¶¶ 4-8). Carmen was hospitalized, distraught, and traumatized, and as a result, needed ongoing psychological treatment. (*Id.* at 38-40, ¶¶ 7-8, 12-17). Despite her trauma following the attack, Carmen cooperated with law enforcement and assisted in the eventual arrest of her rapist. (*Id.* at 38-39, ¶¶ 9-12). Because of her victim status and cooperation with the police, Carmen received U nonimmigrant status in July 2009 under 8 U.S.C. § 1101(a)(15)(U). (*Id.* at 164). As Carmen's condition improved, she sought to reunite with her son. (D.E. No. 24-1 ("Pl. Mov. Br.") at 13).

In March 2010, Carmen filed a Form I-485 with USCIS to adjust her status from U Visa to LPR. (CAR at 378). USCIS approved Carmen's application two months later. (*Id.*). On September 16, 2010, Carmen filed an I-929 petition on behalf of Dario, the first step to have Dario adjust to LPR status as a qualifying relative. (*Id.* at 248-54). USCIS received the I-929 petition on September 17, 2010 (*id.* at 248)—the day before Dario's twenty-first birthday (*id.* at 185)—and approved the petition on May 24, 2011, after Dario had turned twenty-one years old (*id.* at 77). Dario entered the United States the next year and filed his Form I-485 on February 20, 2013, when he was twenty-three years old. (*Id.* at 79, 185).

In January 2014, USCIS issued a Notice of Intent to Revoke its approval of Carmen's I-929 petition. (*Id.* at 85). The agency stated that its prior approval of the I-929 petition was in error because "at the time of approval, Dario . . . had reached the age of 21 years and did not meet the

definition of child for immigration purposes." (*Id.*) (citing 8 C.F.R. § 245.24(g)(2)). In other words, under the Age-Out Rule, Dario's "qualifying family relationship" did not "continu[e] to exist through the adjudication of the adjustment or issuance of the immigrant visa." (*See id*). USCIS then revoked its approval of the I-929 petition and denied Dario's pending Form I-485. (*Id.* at 82, 88-89).

Carmen sought reconsideration of USCIS's decision, and USCIS granted Carmen's request. (*Id.* at 235). Upon reconsideration, however, USCIS affirmed its revocation of the I-929 petition. (*Id.*). In October 2014, Carmen filed an appeal with the Administrative Appeal Office ("AAO") arguing, in part, that the age-out protection afforded to children of *current* U Visa holders should also apply to Dario. (*See, e.g.*, *id.* at 25-27). The AAO affirmed USCIS's revocation of the I-929 petition and reiterated the requirement that Dario needed to "remain a child . . . until lawful permanent residency has been conferred." (*Id.* at 4-5). Though the AAO "recognize[d] the sympathetic facts present in this matter," the AAO rejected Plaintiffs' claim that the age-out protection applicable to children of current U Visa principles should apply to Dario. (*Id.*).

## C. Plaintiffs' Complaint

On March 18, 2016, Plaintiffs commenced this lawsuit to challenge Defendants' adoption and implementation of the Age-Out Rule. (D.E. No. 1, Compl. ¶ 7). Plaintiffs' Complaint contains two claims for relief under the APA: (1) that the Age-Out Rule exceeds statutory authority (*id.* ¶¶ 32-36); and (2) that the Age-Out Rule is arbitrary and capricious (*id.* ¶¶ 37-40). Plaintiffs ask the Court to "declare 8 C.F.R. § 245.24(g)(2) unlawful, vacate 8 C.F.R. § 245.24(g)(2), enjoin Defendants from relying on, and enforcing, 8 C.F.R. § 245.24(g)(2), and compel Defendants to adjudicate Carmen's petition for immigration benefits for Dario and Dario's application for adjustment of status without reference to the age-out requirement." (*Id.* ¶ 9).

### III. Legal Standard

#### A. Summary Judgment

When reviewing agency action under the APA, the District Court "sits as an appellate tribunal and the entire case on review is a question of law." *Soccer Centers, LLC v. Zuchowski*, No. 17-1024, 2017 WL 4570290, at *5 (D.N.J. Oct. 13, 2017). Here, "the administrative agency [was] the finder of fact, and [this Court] does not need to determine whether there are disputed facts to resolve at trial." *Byrne v. Beers*, No. 13-6953, 2014 WL 2742800, at *3 (E.D. Pa. June 17, 2014). The Court's review is limited to the administrative record on which the agency based its decision. *See* 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Soccer Centers, LLC*, 2017 WL 4570290, at *5 (citing *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007)).

#### B. *Chevron* Deference

Plaintiffs and Defendants agree that *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.* provides the applicable standard of review for Plaintiffs' first cause of action. 467 U.S. 837 (1984). The *Chevron* analysis provides courts reviewing agency regulations with a familiar two-step inquiry in which the "executive department's construction of a statutory scheme" is given controlling weight, consistent with "the principle of deference to administrative interpretations" long recognized by the Supreme Court. *Id.* at 844. "[A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). Where a statute leaves a gap and is

silent, it is presumed that the agency is given authority to fill that gap. *Chevron*, 467 U.S. at 843-44. "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844.

At issue in this case is Defendants' authority to implement the Age-Out Rule. Congress has endowed the DHS with the general authority to administer the nation's immigration laws. *See* 6 U.S.C. § 202; *La. Forestry Ass'n v. Sec'y U.S. Dep't of Labor*, 745 F.3d 653, 670 (3d Cir. 2014). In particular, Congress granted the DHS general authority to implement regulations in accordance with the U Visa statutory scheme at issue here. *See* VAWA of 2005, Pub. L. 109-162 at § 828, 119 Stat. 2960, 3066 (codified as amended in scattered sections of 8 U.S.C.). Because the DHS promulgated the regulation at issue pursuant to that authority, Defendants are entitled to *Chevron* deference. *See, e.g.*, *Immigration & Naturalization Serv. v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999).

## C. Judicial Review Under the APA

Plaintiffs' second cause of action alleges that the Age-Out Rule is arbitrary and capricious under the APA. Under the APA, a reviewing court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law"; "in excess of statutory jurisdiction, authority or limitations, or short of statutory right"; or "without observance of procedure required by law." 5 U.S.C. §§ 706 (2)(A), (C), (D). A reviewing court is to consider whether the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "The scope of review under the

'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Id.*

## IV. Discussion

### A. The Age-Out Rule is valid under *Chevron*.

#### 1. *Chevron* Step One

Under *Chevron*, the first question the Court must ask is "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842. To answer that question, courts "consider the statutory text, as well as traditional tools of statutory construction." *Si Min Cen v. Att'y Gen.*, 825 F.3d 177, 186 (3d Cir. 2016). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. If, however, the Court finds that Congress has not directly addressed the "precise question at issue" and that the statute is "silent or ambiguous with respect to the specific issue," the Court moves onto Step Two: "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843; *Si Min Cen*, 825 F.3d at 186.

The precise question at issue here is whether 8 U.S.C. § 1255(m)(3) requires a child beneficiary to remain under twenty-one through the adjudication of his or her application to adjust status. Section 1255(m)(3) reads in pertinent part:

> Upon approval of adjustment of status . . . of [a principal former U Visa holder] . . . the Secretary of Homeland Security may adjust the status of or issue an immigrant visa to a . . . child . . . who did not receive a [derivative U Visa], if the Secretary considers the grant of such status or visa necessary to avoid extreme hardship.

As Plaintiffs correctly note, the plain language of the statute articulates three requirements: (i) the beneficiary must be a "child" (i.e., unmarried and under twenty-one); (ii) the beneficiary must not have previously received a U Visa; and (iii) the granting of status must be necessary to avoid

extreme hardship. (*See* Pl. Mov. Br. at 17-18).[3] Plaintiffs argue that the first clause of § 1255(m)(3)—"[u]pon approval of adjustment of status [of a principal] former U Visa holder"— dictates when those three criteria must be satisfied. (*Id.*). In particular, Plaintiffs assert that the date upon which an intended beneficiary is considered a "child" should freeze "upon approval of the former U Visa holder's adjustment of status." (*Id.* at 18). For the following reasons, the Court disagrees with Plaintiffs' interpretation.

Although the former U Visa holder's successful adjustment of status is certainly a pre-condition to the approval of the qualifying family member's petition, § 1255(m) does not suggest that the date of the former U Visa holder's adjustment is the cutoff date for determining if the family member is a "child" under the INA. The reasoning is actually quite straightforward: the plain terms of the statute grant the Secretary of Homeland Security the authority to adjust the status of a "child." *See* 8 U.S.C. § 1255(m)(3) ("[T]he Secretary of Homeland Security may adjust the status of or issue an immigrant visa to a spouse, *a child*, or in the case of an alien child, a parent . . . ."). If the family member already turned twenty-one, he or she would not be a "child" when the Secretary of Homeland Security adjusts his or her status; he or she would be an adult (in layman's terms) and would fall outside the scope of the statute.

Indeed, under Plaintiffs' view of the statute, a family member could file for adjustment of status under § 1255(m)(3) at *any* age so long as the principal former U Visa holder adjusted status before the child's twenty-first birthday. But under the plain terms of the statute, the Secretary of Homeland Security is not authorized to adjust the status for somebody who is above the age of twenty-one, at least in the parent-child context. The Court therefore concludes that the Age-Out

---

[3]     For completeness, the Court notes Plaintiffs' contention that "Defendants' initial approval of Plaintiffs' Form I-929 petition demonstrates that they consider Plaintiffs to have satisfied" the requirement that Dario's status adjustment is necessary to avoid extreme hardship. (*Id.* at 18 n.42).

Rule is consistent with the plain language of § 1255(m)(3), which requires that a child beneficiary remain under twenty-one through the adjudication of his or her application to adjust status.

Since the Court finds that Congress's intent on the precise question at issue is clear, the analysis ends at Step One. And since Dario was over the age of twenty-one when USCIS adjudicated his Form I-485, USCIS was correct in denying his application to adjust status.

### 2. *Chevron* Step Two

To be sure, even if the Court were to find that § 1255(m)(3) is ambiguous, Plaintiffs' challenge would still fail under *Chevron* Step Two. Where a statute is "silent or ambiguous with respect to the specific issue," the Court is to decide whether the agency's action is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843; *Si Min Cen*, 825 F.3d at 186. Where Congress has not merely failed to address a precise question, but "has given an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation, then the agency's legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Zheng v. Gonzalez*, 422 F.3d 98, 112 (3d Cir. 2005) (citing *Chevron*, 467 U.S. at 843-44).

Agencies are given particular authority to clarify any ambiguities within a statute, and those policy choices are given deference because it is presumed that agencies are better equipped to answer those questions than the courts. *Chevron*, 467 U.S. at 843-44. "If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) (citing *Chevron*, 467 U.S. at 843-44, n.11).

Here, Congress has endowed the DHS with the general authority to make rules carrying the force of law. *See* VAWA of 2005, Pub. L. No. 109-162 at § 828, 119 Stat. 2960, 3066 (codified as amended in scattered sections of 8 U.S.C.). The question here is not whether, in the Court's view, aging-out is inappropriate for a program designed to offer assistance to victims of violent crimes, but rather, whether Defendants' view that aging-out "is appropriate in the context of this particular program is a reasonable one." *Chevron*, 467 U.S. at 845. The Court "must determine whether the regulation harmonizes with the plain language of the statute, its origin and purpose." *Zheng*, 422 F.3d at 119.

Applying the deferential *Chevron* standard, the Court concludes that the Age-Out Rule was a reasonable policy choice for the agency to make. Like other courts that have upheld agency regulations under Step Two of *Chevron*, the Court's conclusion rests on (i) the plain language of the statute; (ii) the broader statutory scheme; and (iii) the purpose of the statute. *See, e.g.*, *Si Min Cen*, 825 F.3d at 190.

### a. Plain Language

As discussed above, the plain language of § 1255(m)(3) grants the Secretary of Homeland Security the authority to adjust the status of a former U Visa holder's "child." 8 U.S.C. § 1255(m)(3). The DHS implemented 8 C.F.R. § 245.24(g)(2) to clarify that an intended beneficiary under § 1255(m) must maintain his or her qualifying family relationship through the adjudication process. (*See, e.g.*, Def. Mov. Br. at 26-27). Additionally, as discussed further below, the general rule under the INA provides that an applicant must demonstrate eligibility both on the date he or she files a petition and through the petition's adjudication. Neither Plaintiffs nor the record provide any compelling reason to conclude that if § 1255(m)(3) were "susceptible to multiple interpretations, the age-out rule [could not] reasonably be reconciled with the statute's text." (Pl.

Mov. Br. at 20). Thus, Defendants' interpretation of the Age-Out Rule is reasonable given the plain language of 8 U.S.C. § 1255(m)(3).

### b. Broader Statutory Scheme

To "examine the statute in more depth" under Step Two, courts should "construe statutes, not isolated provisions." *Zheng*, 422 F.3d at 116; *Si Min Cen*, 825 F.3d at 193 (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 568 (1991). "Definitions in other parts of the INA may . . . shed light on what Congress envisioned." *Si Min Cen*, 825 F.3d at 193.

Congress's treatment of family members of former U Visa holders does not necessarily differ from the way Congress has historically treated derivative family members in other visa classifications. Under the INA, a petitioner must typically be eligible for a visa at the time it is issued, meaning that a petitioner must maintain his or her "classification" under the immigration laws through adjudication. *See* 8 U.S.C. § 1154(e); *see also* 8 C.F.R. § 103.2(b)(1) (providing that an applicant for an immigration benefit "must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and *must continue to be eligible through adjudication*"). While Congress allows children of aliens to "derive" immigration benefits from their parents, children generally must maintain the required relationship with the primary beneficiary through the adjudication process. *See, e.g.*, 8 U.S.C. § 1153(d); 8 U.S.C. § 1154(e); *see also Scialabba v. Cueller de Osorio*, 134 S. Ct. 2191, 2196 (2014) (recognizing that a child who is under twenty-one at the start of the adjudication process but an adult sometime after the relevant petition was filed may "no longer qualify for an immigration status given to minors"); *Hong v. Immigration & Naturalization Serv.*, 23 F. App'x 850, 851 (9th Cir. 2002) (finding that petitioner had become ineligible for adjustment to LPR status because he had aged out since the filing of his petition).

Where Congress wanted to exempt certain aliens from aging out, it has done so explicitly.

For example, in 2002, Congress enacted the Child Status Protection Act ("CSPA"), designed to

protect a beneficiary's immigration classification as a child when he or she ages out due to

excessive processing times.  CSPA, Pub. L. No. 107-208, 116 Stat. 927 (codified as amended at 8

U.S.C. § 1101, *et seq.*); *see, e.g.*, 8 U.S.C. § 1158(b)(3)(B) (protecting children of asylum

applicants from aging-out by freezing the age of the child upon the filing date of the application).

But even under the CSPA, certain children are still subject to aging-out, partially because the

CSPA provides protection to only a subset of aliens who "outpaced the immigration process."

*Scialabba*, 134 S. Ct. at 2196-97.  Again in 2013, Congress amended certain immigration

requirements for children filing as derivatives of current U Visa holders.  VAWA of 2013, Pub. L.

No. 113-4, § 805, 127 Stat. 54, 111 (codified at 8 U.S.C. § 1184(p)).  The amendments effectively

protected children of current U Visa petitioners from aging-out of derivative eligibility during the

pendency of the application by providing that

> an unmarried alien who seeks to accompany, or follow to join, a parent granted [a
> U Visa], and who was under 21 years of age on the date on which such parent
> petitioned for such status, shall continue to be classified as a child for purposes of
> [derivative U Visa] if the alien attains 21 years of age after such parent's petition
> was filed but while it was pending.

8 U.S.C. § 1184(p)(7)(A).

Plaintiffs urge the Court to afford the same protections under 8 U.S.C. § 1184(p)(7)(A) to

children of former U Visa holders.  (*See, e.g.*, Pl. Mov. Br. at 24-25).  But this statutory

amendment, like the CSPA, did not affect eligibility under § 1255(m)(3) for children of former U

Visa holders.  For that reason, and the reasons discussed below, the Court does not agree with

Plaintiffs that "[t]here is no basis to conclude that Congress intended anything different for the

almost identically situated children of Former U Visa Holders in the analogous context of Section

245(m)(3)."  (*Id.* at 25).

After all, Congress is presumed to be aware of an administrative interpretation of a statute and acts with that knowledge when enacting new legislation. *See, e.g.*, *Si Min Cen*, 825 F.3d at 195; *see also White v. Mercury Marine*, 129 F.3d 1428, 1434 (11th Cir. 1997) ("Congress is assumed to act with the knowledge of existing law and interpretations when it passes new legislation."). "Where Congress includes particular language in one section of a statute but omits it [from] another, . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). Though the Court recognizes Plaintiffs' argument that "[a]n inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent," (*see* D.E. No. 26 ("Pl. Reply Br.") at 8), the Court has already determined that Defendants' interpretation and action is consistent with the plain language of § 1255(m).

Furthermore, Congress is presumed to act intentionally when it can be shown that Congress is and has been aware of the opportunity to amend a statute, but has passed on opportunities to do so. *See La. Forestry Ass'n*, 745 F.3d at 674 (finding that the agency action was permissible where "Congress is and has been aware of" the administrative procedure at issue and "has never amended the INA to prohibit" such conduct, since Congress may amend accordingly if otherwise intended).

As evidenced by past amendments to the INA, Congress is well aware of the problems created by the general age-out rule and knows how to freeze the age of a child to retain eligibility where Congress feels it is necessary to do so. *See, e.g.*, 8 U.S.C. § 1151(f) (freezing the age of the alien child to the date on which the petition was filed); 8 U.S.C. § 1158(b)(3)(B) (freezing the age of children of asylum applicants to the date on which the petition was filed). Even more telling is that Congress amended 8 U.S.C. § 1184 (p)(7)(A) (providing age-out protection for children of current U Visa holders) in 2013 well after the Age-Out Rule had been implemented in 2008.

Adjustment of Status to Lawful Permanent Resident of Aliens in T or U Nonimmigrant Status, 73 Fed. Reg. 75540, 75562 (Dec 12, 2008) (codified at 8 C.F.R. § 245(g)(2)).

To be sure, if Congress did not intend for the VAWA age-out protections to exclude children of former U Visa holders and "did not intend to allow the DHS to [act as it did] . . . then Congress may amend the INA accordingly. Where, however, an agency reasonably construes a statute endowing it with broad authority, [the court] must defer to that interpretation, and 'the remedy, if any is indicated, is for congressional, not judicial, action.'" *La. Forestry Ass'n*, 745 F.3d at 674 (quoting *Flood v. Kuhn*, 407 U.S. 258, 285 (1972)).

### c. *Purpose of the Statute*

To determine if a regulation is a permissible construction of its enabling statute, courts should consider "the policies framing the statute." *Am. Farm Bureau Fed'n v. E.P.A.*, 792 F.3d 281, 307 (3d Cir. 2015), *cert. denied*, 136 S. Ct. 1246 (2016). "Even if the statute is ambiguous, and even if the [agency] is empowered to issue regulations to fill in gaps in the statute, those regulations must be 'reasonable in light of the legislature's revealed design.'" *Zheng*, 422 F.3d at 116) (quoting *Nationsbank of N. Carolina v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)).

Congress's express intent in enacting the U Visa scheme was both to "strengthen the ability of law enforcement agencies to detect, investigate and prosecute" specified crimes committed against aliens, and to "offer[] protection to victims of such offenses in keeping with the humanitarian interests of the United States." VTVPA, Pub. L. No. 106-386, § 1513, 114 Stat. 1464, 1533. To advance those goals, Congress created two mechanisms for U Visa holders to obtain LPR status for their children and other qualifying family members so that alien victims could be with their families. *Id.* at § 1513(a)(2)(C), 114 Stat. 1464, 1534; *but see Robinson v.*

*Napolitano*, 554 F.3d 358, 364, 367 (3d Cir. 2009) (stating that reunification of families is emphasized as the foremost consideration of the INA but nevertheless finding petitioner ineligible for the requested immigration benefit because "eligibility for an immediate relative visa depends upon the alien's status at the time USCIS adjudicates the I-130 petition, not when the petition was filed"). Plaintiffs argue that the Age-Out Rule undermines the core purpose of the U Visa statutory framework because its "sole effect is to prevent immigrant victims of serious crimes . . . from reuniting with their immediate family members, even when the family members meet all the requirements enumerated in the statute." (Pl. Mov. Br. at 22). But Plaintiffs ignore many other aspects of the INA that support Defendants' implementation of the Age-Out Rule.

"Admission of an alien to this country is not a right but a privilege which is granted only upon such terms as the United States prescribes." *Montgomery v. Ffrench*, 299 F.2d 730, 734 (8th Cir. 1962). The Age-Out Rule implements the requirement that a "child" beneficiary remain under twenty-one through the adjudication of his or her application to adjust status. 8 U.S.C. § 1101(b)(1). Unfortunately for Carmen and Dario, adult sons and daughters have never been treated as favorably under the INA as children under the age of twenty-one. *See* 8 U.S.C. §§ 1153(a)(1), 1153(a)(2); *Alvidrez v. Ridge*, 311 F. Supp. 2d 1163, 1166 (D. Kans. 2004) ("An adult son or daughter can reasonably be expected to live apart from his or her parents while waiting for his or her [visa] to become available."). As Defendants explain, the adjustment-of-status option for former U Visa holders is merely "another alternative . . . when the normal options of accompanying or following to join were not exercised." (D.E. No. 27 ("Def. Reply Br.") at 10). Defendants add that "the addition of the extreme hardship component to this provision" underscores this point: "if Congress was concerned with family unity generally, it would presumably not have erected this additional barrier to adjustment under the statute." (*Id.*).

This distinction reflects policy decisions made by Congress defining its family-reunification priorities. *See*, *e.g.*, *Fiallo v. Bell* 430 U.S. 787, 797 (1977). And this Court is "mindful of [its] obligation to respect the decisions of the immigration agencies, which are informed by long experience and deep specialization in matters of great national importance." *Zheng*, 422 F.3d at 120. The Supreme Court has explained:

> This distinction is just one of many drawn by Congress pursuant to its determination to provide some—but not all—families with relief from various immigration restrictions that would otherwise hinder reunification of the family in this country. . . . With respect to each . . . legislative policy distinction, it could be argued that the line should have been drawn at a different point . . . . But it is clear . . . . that there are policy questions entrusted exclusively to the political branches of our Government, and we have no judicial authority to substitute our political judgment for that of [] Congress.

*Fiallo*, 430 U.S. at 797-98.

Plaintiffs cite a compelling proposition from Justice Nygaard's dissent in *Robinson*, 554 F.3d at 371.[4] But this Court, like the majority in *Robinson*, concludes that Plaintiffs' claims "must be rejected, not because of any government bureaucracy but because [Dario] does not meet one of the Congress' [sic] requirements . . . ." 554 F.3d at 367. For all the reasons discussed above, the Age-Out Rule is not "manifestly contrary" to its governing statute and the INA. *See Zheng*, 422 F.3d at 112 (quoting *Chevron*, 467 U.S. at 844); *see also Si Min Cen*, 825 F.3d at 189 (holding that the regulation reversed Congress's intended eligibility structure and must be struck down). Rather, the Age-Out Rule is a permissible construction of the § 1255(m)(3) and is thus valid under *Chevron* Step Two.

---

[4] "It is inconceivable to me that Congress intended an alien's status to be contingent upon the amount of time that the executive department takes to process a timely and proper petition—a factor completely outside of the control of the alien. This interpretation creates an arbitrary, irrational and inequitable outcome in which approvable petitions will be treated differently depending solely upon when the government grants the approval." *Robinson*, 554 F.3d at 371 (Nygaard, J., dissenting).

The Court echoes the sentiments expressed by the Third Circuit in a similar case.[5]  And while the Court is sympathetic to the facts here and is aware that this result extinguishes Dario's eligibility for LPR status under § 1255(m)(3), the Court's "obligation is to interpret the statute according to its language."  *Robinson*, 554 F.3d at 367.  The Court also notes that other measures for reunification may exist for the adult sons or daughters of former U Visa holders.[6]

## B. The Age-Out Rule is not arbitrary and capricious under the APA.

Plaintiffs' second cause of action alleges that the Age-Out Rule is invalid under the APA because it is arbitrary and capricious.  (*See* Compl. ¶ 40) (citing 5 U.S.C. § 706(2)(A)).  A decision is arbitrary and capricious if the agency has

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Under this standard, "a reviewing court may not set aside an agency rule that is rational, based on consideration of [] relevant factors and within the scope of authority delegated to that agency by the statute."  *Id.* at 42.  The ultimate standard of review is a narrow one, and the Court is not to substitute its judgment for that of the agency.  *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 416 (1971).  The Court is entitled to "uphold a decision of less than ideal clarity if the agency's

---

[5]     "We acknowledge that the decision we reach today is a difficult one . . . . [However,] under the governing standards of review, and in consideration of the important principles of separation of powers that guide our review of agency action, we feel bound to defer to the DHS's interpretation of the statutes under which Congress has authorized it to administer [its visa program]. We reiterate that should Congress disagree with this construction of the INA, Congress may take action to amend the statute accordingly."  *La. Forestry Ass'n*, 745 F.3d at 675, n.17.

[6]     Notably, though Plaintiffs' application for Dario's adjustment of status fails under § 1255(m)(3), a third opportunity outside of the U Visa regime would allow Carmen to file an I-130 petition on behalf of Dario, subject to numerical limitations for adult sons and daughters.

path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974).

"The analysis of disputed agency action under *Chevron* Step Two and arbitrary and capricious review is often the same, because 'under *Chevron* step two, [the court asks] whether an agency interpretation is arbitrary or capricious in substance.'" *Pharm. Research & Mfrs. of Am. v. FTC*, 790 F.3d 198, 209-10 (D.C. Cir. 2015) (citing *Judulang v. Holder*, 132 S. Ct. 476, 483 n.7 (2011)); *see also id.* at 198 ("As is often the case, our review here of the [agency's] interpretation of its authority under *Chevron* Step Two overlaps with our arbitrary and capricious review under 5 U.S.C. § 706(2)(A)."). Thus, for the reasons discussed under *Chevron* Step Two, the Court rejects Plaintiffs' claim that the Age-Out Rule is arbitrary and capricious under § 706(2)(A) of the APA.

To be sure, the Court has already found that the Age-Out Rule aligns with the plain text of § 1255(m)(3). Therefore, the Age-Out Rule is not "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Similarly, the Court does not find that the DHS relied "on factors which Congress has not intended it to consider." *Id.* Rather, the DHS relied on the plain text of the statute—or at worse, a reasonable interpretation of the statute. The Court also does not find that the DHS "entirely failed to consider an important aspect of the problem" or "offered an explanation for its decision that runs counter to the evidence before" it. *See id.* Accordingly, the Court rejects Plaintiffs' arguments that the Age-Out Rule "is not supported by *any* evidence, much less substantial evidence, and is not the result of reasoned decisionmaking." (Pl. Mov. Br. at 29) (emphasis in original).

**V. Conclusion**

For the reasons set forth above, the Court GRANTS Defendants' cross-motion for summary judgment and DENIES Plaintiffs' motion for summary judgment. An appropriate order accompanies this Opinion.

<i>s/Esther Salas</i>

**Esther Salas, U.S.D.J.**